## APPEAL OF ALBERT P. HILL CO., INC.

Docket No. 1509.   Submitted June 17, 1925.   Decided October 28, 1925.

*Harry B. Wassel, Esq.,* and *O. G. Richter, C. P. A.,* for the taxpayer.
*E. C. Lake, Esq.,* for the Commissioner.

Before JAMES, LITTLETON, SMITH, and TRUSSELL.

This is an appeal from the determination of a deficiency in the amount of $2,988.33 for the year 1918. The taxpayer claims to be a personal-service corporation.

### FINDINGS OF FACT.

The taxpayer is a Pennsylvania corporation having its principal office in Pittsburgh. Its business is that of an advertising agency. The business of the taxpayer consisted in making studies of advertising needs of clients, formulating plans therefor, preparing the advertising matter, submitting the same to engravers from whom. it secured the final publisher's copy, selecting advertising media, and in general supervising and conducting advertising campaigns for its clients.

In common with advertising agencies generally, the taxpayer relied for its income upon the differential allowed by publishers of newspapers and magazines and other advertising media, between the gross price of advertising space and a discount of 15 per cent therefrom allowed to the advertising agencies. The general practice in the business, also applying to this taxpayer in the taxable year in question, was to collect from the client the gross price of the adver-

tising space at a date slightly in advance of the time when the advertising medium required payment for the space. It was regularly anticipated that the client would pay the taxpayer in advance of the time when the taxpayer would be required to remit to the advertising medium. In making remittance the taxpayer deducted 15 per cent from the face of the bill from the newspaper, magazine, or other medium, as received by it. The taxpayer placed the order for space with the advertising medium, but in all cases specified the name of the advertiser, and the space contracted for was specifically for that advertiser.

The taxpayer reported its net income for the taxable year at $11,136.76, the detail of its income statement being as follows:

### GROSS INCOME.

| | | |
|---|---:|---:|
| Gross income from services or from operations other than trading or manufacturing | $49,074.78 | |
| Interest on obligations of the United States issued since Sept. 24, 1917 | 59.13 | |
| Interest from other sources | 991.91 | |
| Cash dividends on stock of domestic and resident corporations | 717.50 | |
| Total | | $50,843.32 |

### DEDUCTIONS.

| | | |
|---|---:|---:|
| Ordinary and necessary expenses | $33,844.61 | |
| Compensation of members (including shareholders of personal service corporation who drew salaries therefrom) | 5,200.00 | |
| Taxes (except Federal income, war profits, and excess profits) | 250.00 | |
| Debts ascertained to be worthless and charged off within year | 464.45 | |
| Total | | $39,759.06 |
| | | 11,084.26 |
| Less interest on obligations of the United States issued before Sept. 24, 1917, and on obligations of its possessions | 52.50 | |
| | | 11,136.76 |

In the foregoing statement the taxpayer has stated as its income from services the amount of $49,074.78. This represents its income from commissions, including also a small amount of direct compensation. The total amount of advertising placed by it is not stated in the testimony or other evidence submitted, but under the evidence it would appear to be approximately $325,000.

The balance sheets as at the beginning and end of the year 1918, as shown in the taxpayer's return for that year, are as follows:

|  | Jan. 1, 1918 | Dec. 31, 1918 |
|---|---|---|
| ASSETS | | |
| Cash | $18, 229. 76 | $24, 941. 35 |
| Trade accounts | | 1, 137. 50 |
| Accounts and notes receivable | 28, 965. 25 | 26, 408. 04 |
| United States bonds | 2, 000. 00 | 5, 700. 00 |
| Stock | 12, 343. 76 | 15, 956. 26 |
| Bonds | 4, 956. 07 | 4, 956. 07 |
| Deferred charges | 3, 151. 09 | 1, 830. 38 |
| Office furniture | 506. 98 | 501. 98 |
| | 70, 152. 91 | 81, 431. 58 |
| LIABILITIES | | |
| Accounts payable | 20, 617. 42 | 23, 642. 95 |
| Capital stock | 10, 000. 00 | 10, 000. 00 |
| Surplus | 39, 535. 49 | 47, 788. 63 |
| | 70, 152. 91 | 81, 431. 58 |

Albert P. Hill was, during the year 1918, the president of the taxpayer, owned all of its capital stock, was regularly engaged in the active conduct of its business and had no other employment. Included in the above reported income from services rendered of $49,074.78 was $30,520, the reported differential between the amount received by the taxpayer from its clients and the amount remitted to publications for advertising space. The sum of $13,495.41 was reported as direct compensation or fees for advertising services not accrued as a result of the foregoing differential.

The taxpayer was a recognized advertising agency of the American Newspaper Publishers' Association, the Periodical Publishers' Association, and the Curtis Publishing Co., and placed contracts for advertising space in the newspapers and periodicals of members of those associations or belonging to the Curtis Publishing Co., under regular contracts wherein the name of the advertiser was in all cases incorporated. The discount differential in the price of newspaper or magazine space is allowable under the rules of the above-mentioned associations only to recognized advertising associations.

The American Newspaper Publishers' Association requires at least annually, and did require at the end of the taxable year from this taxpayer, a statement of its financial condition. In addition to the discount or differential on advertising space, the taxpayer was granted and usually took a cash discount for prompt payment of bills for advertising space. This discount was in the usual course of business also allowed by the taxpayer to the advertiser, but the total cash discounts earned during the taxable year in question exceeded the cash discounts allowed.

The accounts and notes receivable in the balance sheets of the taxpayer, above set forth, represented the amounts due from customers on notes and open accounts for advertising space, and the accounts payable represented the amount due publishers for space. The taxpayer ordered advertising space from publishers in its own name, but in each case reported also the name of the advertiser. In the usual course of business the taxpayer billed the advertiser for the space used during a month and expected payment of such bills before bills of the publishers transmitted to it were due for payment, and publishers were usually paid from the receipts of the taxpayer from advertisers. In some instances the taxpayer paid advertisers' bills to publishers, although the amounts of such bills had not been paid to it. In a few instances, and in the only instance in which advertisers failed to pay, the taxpayer paid the publisher for the advertising and charged off the accounts against the advertisers when they were ascertained to be worthless. The amount so charged off in the taxable year was $464.45. A sample agreement for space, submitted as an exhibit for the Commissioner, showing the order and acceptance by The Literary Digest of advertising placed by the taxpayer for the American Conduit Manufacturing Co., contained the following provisions:

The form is standard, stating the name of the taxpayer, the name of the publisher, and in respect of the advertiser states: " Covering the advertising of American Conduit Manufacturing Co., New Kensington, Pa." The agreement contained no specific provision relative to responsibility for payment, but under a column headed " Bill at," contained in typewriting the figures " 765.00 per insert gr." There was further provided thereon the following:

This option agreement is subject to the following: " Copy of your publication must be mailed to us and the advertiser while advertising appears. This agreement is an option for space only subject to our cancellation. Advertising only to be inserted on our express order, we furnish copy for each issue."

In the ordinary course, advertising was placed by the taxpayer only under substantially the foregoing agreement, and advertisers made no direct agreements with the publishers and no agreement specifically assuming responsibility for payment to the publishers for advertising space ordered by the taxpayer over their name as prospective user of the space.

#### DECISION.

The determination of the Commissioner is approved.
TRUSSELL, PHILLIPS, and STERNHAGEN dissenting.